The United States Court of Appeals for the Ninth Circuit is now in session. Okay. Good morning, everyone. Let's make sure everybody can hear one another. Judge Clifton. Aloha. Okay. Judge Harpool. Good morning. Okay. And let's see. We have on video, I believe it would be Mr. Gu? Mr. Goh? No? Your Honor, this is Mr. Goh. I am appearing by telephone. Oh, you're appearing by telephone. Okay. And then on video, we have Mr. Collette. Yes, I'm here. Okay. All right. So the first three cases on our calendar this morning for the public who may be watching this via YouTube, USA v. Bardientos, USA v. Nichols, and Gurry v. Baker have all been submitted on the briefs and record. So our first case up for argument this morning is Hsiao v. Scalia and Mr. Collette. Thank you, Your Honor. May it please the Court. My name is Matthew Collette from Massey and Gale on behalf of the petitioner, Ya-Wen Hsiao, in this case. As a result of the Department of Labor's denial of a labor certification application filed on her behalf by her employer, Ms. Hsiao lost the opportunity to continue with a three-step process that ultimately could lead to permanent residency in the United States. She also lost the ability to renew her H-1B visa, meaning that she's not authorized, or not for a stay by this court, to work in the United States and is subject to deportation. Notwithstanding these clear adverse effects caused by the agency decision, the district court here denied standing. The court recognized that Ms. Hsiao suffers an injury, in fact, under Article III, but held that the injury is not fairly traceable to the Department of Labor decision and that it's not redressable. Both of those holdings are wrong. The injury clearly is fairly traceable here. The Department of Labor slammed the door on the three-step process, depriving her of the opportunity to continue with that process. And it means she can't work in the United States. We cited in our brief the Uniform Court of Appeals case law that recognizes that this lost opportunity is caused by an agency decision denying a visa. Let me just ask you, so what is the relief that she's seeking here? Let me back up. What is the relief she's seeking through her lawsuit? Yes, through her lawsuit, she is seeking a reversal of the Department of Labor decision. And that decision foreclosed her from doing what? That decision foreclosed her from getting a labor certification, which would have allowed her to move to Step 2 of this process, filing for an I-140 position before USCIS, which, if she gets that, allows her to move to Step 3 of the process. It also foreclosed her from renewing her H-1B visa. And one of the things the district court said was she could go get another employer or her employer could file a new application. That wouldn't work for her, because in order to renew her H-1B visa, which would be expired, she can only do so while this process is pending. And she can only do so while this process has been pending for a year. So if she were to go back and try again, she would have to wait for a year, but by then her visa would be expired and she would be subject to deportation. What she is seeking in the district court is a reversal of the decision. Now, it would be remanded back to the agency, but when it comes to the Article 3 standing inquiry, that is of no moment. It's clear that what the agency has done here has caused this lack of opportunity, and it would be redressed by a favorable decision. And that's what this court's decision in Abood stands for. So the only thing she's really seeking in the district court is to overturn the agency's decision at Step 1, so she can have the opportunity to move to Step 2. Yes, that is exactly right. And does she need to demonstrate any kind of eligibility for Step 2, any kind of showing? And does she here? No, she doesn't need to. The injury here is the lost opportunity. That's what Abood recognizes. That's what the cases we've cited, Patel, Kurapati, those all recognize that the injury is the lost opportunity, and that is caused by slamming the door at Step 1. You can't move to Step 2. That itself is an injury. And while you're trying at Step 2, you're not authorized to work in the United States, so it's a double whammy for her. She would not be able to move to the next step, which is Patel, Kurapati, Matanya. Abood was not part of the three-step process, but Abood recognizes that this lost opportunity is an injury and that it's caused by the denial of the visa, and it would be redressed by a favorable decision. And I think the district court, when it said, well, it's not caused by the decision because she can try to mitigate it somehow by finding a new job or getting the employer to file another application, not only does it work factually, as she alleged in her complaint, she cannot realistically go find another employer. That's at page 70 of the excerpts of record. But that concept would have no limiting principle. Under the government's theory, the employer could always try again, make another attempt, file a new application. And if that's denied, then presumably there would be no standing because the employer could do it again. I'm struggling for a limiting principle to the government's arguments here. So it seems clear under the uniform case law that Michaud would suffer harm. And I would say one more thing about that. Even if she were able to go file a new application or get her employer to do that, she would lose her priority date for applying for a green card down the road. Even though this is at step one, the priority date for step three is based on the receipt of the application for labor certification by the Department of Labor. So I think that not only shows that all three steps are tied together, it shows that the immigrant has an intense legitimate interest in this process, one that is redressable by a favorable decision. Just let me ask you one other question on this redressability issue. Is the best case from the Ninth Circuit a boon? Yes, it is. On zone of interest, it's I think the recent East Bay case, but on redressability, it is a boon. Now, I think it's important to note, as the government points out, a boon involved a relative petition. But the reasoning here is the same. A boon recognizes that it's the lost opportunity that is the injury that would be redressed by a favorable decision. Another thing a boon does is reject the notion that because it's the employer over there, it was the relative, but because a third person is filing the application and engaging in the administrative process, that somehow that means that the immigrant is not representing her own interests and somehow lacks standing. That argument was made in a boon, saying it's the relative who's filing, so immigrant has no interest here, immigrant lacks standing, and a boon clearly rejected that notion, as have several other cases we cited. Kiripati and Mantanya have all rejected the notion that because it's someone else who files the application, there's no interest. In the words of a boon, the immigrant is no mere bystander here. So the fact that she doesn't file the application doesn't change anything. And also on a boon, I should note that all the other cases from other circuits we cited, Patel, Kiripati, and many of the others, rely on a boon and cite a boon. So it is a very important case, despite the fact that it arose in a different context. The district court also reasoned that she might lose at a later step or she might lose on remand, all of which is true, but it doesn't answer the fundamental question of causation and redressability. The fact is that with this denial, she can't proceed to the next step. With this denial, she can't renew her visa. If that denial is reversed, she can do both. Right, okay. Did you want to address the credential standing at all? Yes, absolutely. I think zone of interest is important. This court and the Supreme Court have recognized that that is not an especially demanding test. There is a presumption of judicial review under the Administrative Procedure Act. All you need to be is arguably within the zone of interest, and the Supreme Court decision in Pacek pointed that out, saying we've been very clear to say arguably. Your interest has to be so marginally related or inconsistent with the purpose of the statute as to be kicked out on the zone of interest. And it's the zone of interest protected or regulated by the statute. Under those teachings, Ms. Xiao clearly falls within the zone of interest. This is a process that is designed to decide whether she can work in the United States and ultimately become a permanent resident. The notion that she is not sufficiently interested in that process is wrong. She is designated as the beneficiary of the process. As I mentioned, her priority date for a green card is based upon this process. And we cited cases for both the Seventh and D.C. Circuits, stenographic machines in the Seventh Circuit, Tejesus Ramirez in the D.C. Circuit, both of which held that a challenge to labor certification denial falls within the zone of interest. We cited quite a few other cases, Patel, Currapati, Montagna, if I could go on, from other circuits at Step 2, also recognizing that an immigrant who is denied at Step 2 falls within the zone of interest. In fact, Patel, which was Step 2, relied on stenographic machines and Tejesus Ramirez and said they were based on materially indistinguishable facts. So the fact that those cases were Step 2 I don't think matters. What this court recently said in the East Bay case, which involved asylum, was that it fits the zone of interest because the statute there shapes the eligibility requirements there for asylees. But it does the same here. It shapes the eligibility requirements for an alien seeking at Step 1 to move on to Step 2 and to Step 3. And the fact that Step 1's requirements trigger this priority date, which is referenced in Step 3, indicates that they are all tied together. So to the extent that district court relied on the notion that you need to look only at the specific requirement that the job not affect the wages of U.S. workers doesn't show that only U.S. workers are protected by the statute. What it does is it sets the eligibility requirement. If a U.S. worker is protected, if the statute goes one way, but if the factual inquiry by the agency shows that this would not harm U.S. workers, it protects the immigrant. Do you want to save some time for rebuttal? Yes. If there are no further questions, I will save the rest of my time for rebuttal. Okay. Let's hear from the government. Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honor. My name is Samuel Goh. May it please the Court, I represent the appellee in this matter. Your Honor, this case challenges the Department of Labor's denial of a prospective employer's application for permanent labor certification, which I'll refer to as a permanent application. The denial is based on two grounds. One, that the employer failed to provide adequate documentation of the required steps to recruit U.S. workers. And two, that the employer provided documentation that offered employment terms and conditions that were less favorable to a U.S. worker than a foreign worker. So the Department of Labor determined that due to these deficiencies, the employer failed to show pursuant to 8 U.S.C. 1182A5A1 that, one, there are not sufficient U.S. workers who are able, willing, qualified, and available to fill the position the employer filed the perm application for. And two, the employment of such an alien will not adversely affect the wages and working conditions of workers in the U.S. similarly employed. However, what's different about this case is that it was not brought by the employer to challenge that determination, but by the beneficiary of an I-140 petition that could be filed on her behalf if the perm application was approved. This is problematic because the appellant as a beneficiary, as a prospective beneficiary, repeatedly alleged in the counselor complaint that DOL's denial caused her the following injuries. One, that it left her employer unable to extend her employment. Two, that she could not apply for other jobs in the United States or pursue higher-paying employment opportunities. And three, that she would be forced to leave the U.S. and be separated from her husband and child. Now, as the district court found, these allegations were insufficient because they're simply not correct. The denial did not preclude her from applying for other jobs in the United States or pursue higher-paying employment opportunities, and it did not preclude her from doing that. She could do that. And in terms of being forced to leave the U.S., the denial did not force her to leave the U.S. or be separated from her husband and child. And in terms of her employer being able to extend her employment, the denial did not prevent that either because the employer could file a new application, and in doing so, could file an extension for her H-1B visa, so the employer could extend her employment. Mr. Gu, let me ask you a question. Is it the government's position that a person in the position of Ms. Hsiao could never gain standing to challenge a denial of a labor certification at the first step in this process? Yes, Your Honor. At this point, this is just as it states for in 11-8285. The interests are between the employer seeking to hire the foreign worker and American laborers. Those are the zones of interest here. So in terms of the foreign worker, that is not within the zone of interest of 11-8281, and that makes it clear. Mr. Gu, excuse me, this is Judge Harpool. Didn't you specifically, though, call the employer a beneficiary? Wouldn't normally a beneficiary be within the zone of interest? The law describes the employee as a beneficiary, correct? Your Honor, I mean, there's a proposed beneficiary. Of course, if the employer does gain the labor certification, that enables them to hire foreign workers, and yes, those foreign workers would be potential beneficiaries. But you say that a beneficiary would never, in this instance, be able to challenge at the first level? Your Honor, in terms of beneficiaries, we are talking about anyone, any foreign worker, that could benefit from the employer gaining a labor certification. So, you know, it could be this, you know, it could be the appellant who could be a beneficiary, but there could also be any other person, because this is not specific to a beneficiary's qualification, that could benefit from the employer gaining the labor certification and being able to hire foreign workers. But in this instance, the employee actually had the job for several years, correct? Your Honor, yes, the employer had the job under an H-1B status, but then was, you know, this application is for lawful permanent residency. Right, thank you. Yes. So, Your Honor, I think the main point, which the district court, I think, correctly found, was whether the injuries that were set forth in the complaint, whether appellant met her burden of establishing that these injuries were caused by the Department of Labor's denial and are redressable by a favorable decision by this court. As I said, the district court correctly found that the DOL's denial did not cause these claimed injuries, because she wasn't prevented from applying for other jobs. The employer could extend her employment. Don't you have to get, I mean, in her complaints, and there were two, the operative complaint that we have, she does make reference to, you know, loss of job opportunity and whatnot, but it's all geared towards the fact that she was unable to pursue a permanent residency. You know, going through the whole process. Yes. Your Honor, she makes reference to the loss of opportunity, but she doesn't claim to be injured by it. If you see in the complaint, she makes 50% of these. Well, wait a minute. I think that's the only fair way you could read her, well, maybe not the only fair way. I mean, I think that's a reasonable way you could read the complaint. Okay. I mean, she says, for example, you know, and I realize this complaint is kind of strange. I mean, she's a pro se, but yet it's obvious that she was assisted by a lawyer of some sort, or somebody who had some legal knowledge, because, you know, it's drafted. It starts out with parties, jurisdictional statement, statutory and regulatory background, standing. Then there's specific allegations and claims for relief. So she had some assistance with this, but in the section entitled standing, it states, plaintiff is the direct name beneficiary of a labor certification application by the employer. And it goes on to say that she was denied and deprived the opportunity of pursuing that application. And you have to read that into the claims for relief, because she refers back to all the allegations in the complaint. Yes, Your Honor, I mean, I understand that the lost opportunity is referenced in the complaint. But I also believe that the district court found correctly that the appellant did not allege sufficient facts establishing, you know, that this injury was caused by the Department of Labor's denial or redress by a favorable decision. I mean, it's plaintiff's, it's appellant's burden to establish, you know, that connection and to establish those requirements. And as the district court found and as the governor agrees, that wasn't established here. But if the department's action didn't cause it, what did? Your Honor, you know, it's up to the appellant. That's not an answer to my question. We have to read the complaint fairly. And you're trying to tell me that there's no causation alleged here. What did cause it? Offer up an alternative. Well, Your Honor, I mean, you can't. To me, the only fair way to read the complaint is to say that she's pointing directly at what the department did, which I think she does. Okay. Well, Your Honor, I mean, in terms of lost opportunity, I mean, the, you know, by the Department of Labor denying the employer's labor certification, you know, it did prevent the employer from seeking foreign workers to employ. And then, so, I guess, you know, So isn't that the first domino in a chain of causation? Sure. How is it that her complaint doesn't sufficiently allege traceability? You've just acknowledged it's traced directly back to the department's decision. Well, Your Honor, the department's decision is dealing with the employer's qualifications and employer's requirements to hire a foreign worker. Well, there's not been a dispute here that she has been injured in fact. And if that injury in fact stems directly from the department's decision, I don't know what basis there is to say that she doesn't have standing. Well, Your Honor, I believe with, you know, with the fact that she said that she lost an opportunity to become a permanent resident. And this is kind of the differentiation between this case versus Abood and Patel in current potting. In this case, the alien status is not at stake here. This is just about the employer making the affirmative representation that there's not sufficient U.S. workers and therefore it is allowed to hire foreign workers. You know, with Abood and Patel in current potting, that, in those cases, the alien status was at stake. It was dealing with a particular beneficiary's qualification. I mean, in this case, we're talking about just the employer's ability to hire U.S. workers or foreign workers because there aren't sufficient U.S. workers. And as I said, in terms of a beneficiary, the beneficiaries can be everybody because it is not dependent on a particular beneficiary's qualification. We're saying, basically, that any foreign worker could actually, you know, taking opponents' arguments into account, any foreign worker could challenge a labor certification application and have standing to do so because they could possibly have lost the opportunity to work for this company. Only she's the one that actually lost a job. It's hard for me to see how that doesn't constitute sufficient skin in the game to constitute standing. And you're telling me that, well, there's possibility of somebody else out there not getting hired for that position. That person doesn't have standing. I don't need to argue with you about that. What you need to establish is that this person doesn't have standing and she's the one that lost the job. And there's no dispute about her injury, in fact. So what's the basis for the distinction between this person who actually lost the job and somebody else out there who maybe someday might apply for a job with the same employer? It seems to me those are worlds apart. Well, Your Honor, I think that the point here, the point here is she may have lost, you know, this employer may not have been able to hire her as a foreign worker along with anybody else because there's no qualifications at this time. So in terms of lost opportunity, perhaps she lost opportunity, but everyone else lost an opportunity, too. Because this employer wanted to hire foreign workers, did not meet the requirements to do so. That's being challenged. And, therefore, if you're talking about does she have standing based on lost opportunity, well, I mean, everyone has lost an opportunity. Every foreign worker has lost an opportunity that could be potentially employed by this employer. And she's lost a job. How is losing a job not different? Your Honor, the Department of Labor's denial did not cause her to lose a job. The Department of Labor's denial only said to the employer, you did not meet the qualifications to hire a foreign worker for a permanent labor certification. So at that point, the employer could continue to, you know, go with the appeal process. It could file a new application. But we're talking that the Department of Labor's denial didn't cause her to lose a job. No, it simply just said to the employer that you did not qualify for this. Now, wait a minute. Just a few minutes ago, I asked you wasn't this the first domino that led to that consequence, and you seemed to acknowledge that it was. Are you backing off of that? No. This is the first part in a three-step process for permanent residency. You know, it does not deal with someone losing a job. It pertains to someone going through this three-step process for permanent residency. And so this labor certification, which is not specific to the foreign worker, is step one of that is the employer getting permission. So I do believe there is a disconnect between telling an employer that they can't, they don't have permission to hire a foreign worker for this permanent labor certification versus whether a person has a job or not. Okay. Go ahead. Your Honor, I just also did want to talk about, you know, the redressability between the injuries that the appellant claimed in her complaint and being redressed by a favorable decision. As I said, in her complaint she alleges the injuries of not being able to apply for other jobs, being forced to leave the U.S., and her employer not being able to extend her employment. And in this APA matter, the appropriate remedy that would result in a favorable decision would be remand to the agency. So now we have a look at the appropriate remedy here, a remand to the agency, as saying, well, that redressed her injuries that she alleges in the complaint. And as the district court found, the appellant failed to show that a favorable decision on the employer's labor certification application would redress her injuries. Because, you know, going back... Well, we get lots of immigration cases, and I know I guess you're the Office of Immigration Litigation. I don't know how that's organized. But we get lots of immigration cases where the best the petitioner can hope for is remand to the agency, perhaps, for example, an asylum for the exercise of discretion. And we don't require petitioners to guarantee that they'll actually have the discretion exercised in their favor. I mean, standing just doesn't come up in that context. How is that different here? Well, your Honor, I think it's... What is here and present is the injuries that the appellant has claimed to be, and for the district court, and, you know, with all courts, to analyze whether she has established her burden of established standing regarding those claimed injuries and the ability of the court to redress those injuries with a favorable decision. So, you know, when we're talking about appropriate remedies, appropriate remedies remand to the agency, does that redress her injuries of saying that she can't apply for other jobs, that she can extend her employment, that she'd be forced to leave the U.S.? And so what the district court found is that those injuries would not be redressed by a favorable decision, or that appellant failed to show that those injuries would be redressed by a favorable decision. Okay. And both just because the appropriate remedies remand, and also because, you know, we are talking about the very preliminary step of the process, step two, as opposing counsel pointed out, so there's the I-140 petition where the alias status is at stake, and they do have to take into account the alias qualification. And, you know, with the injuries that she claims versus looking at this from the redressability analysis, the district court and, you know, this court has to determine whether, in light of the fact that she still has to prove her eligibility at the I-140 petition, that the employer still has to show that, you know, to meet all the other requirements. Okay, Mr. Goh, Mr. Goh, I think we got your argument. I think we let you go over time. Oh, I'm sorry, Your Honor. That's okay. So why don't we hear from, do you want to make a final point, Mr. Goh? Your Honor, I did want to, could I just briefly address prudential standing? Very quickly, because I let you go over time. Okay. Make it quick. Okay, I apologize for going over time, Your Honor. With regards to prudential standing, I just want to say that the citation by appellants at East Bay Sanctuary does not change its analysis. You know, East Bay stands for the fact that you look at the particular provision of the law, which is 1182A5, and you look at any other provisions that help you understand that provision's purpose. So contrary to what appellant says, it's not looking at the entire section of 1182. It's looking at 1182A5. And this is in contrast with the other cases, Patel, Abood, where those cases rely on statutes that specifically talk about the immigrant's qualifications. This particular statute at issue does not talk about the qualifications of the particular. Okay. All right. Thank you very much. Thank you, Mr. Goh. Okay. Mr. Collette, you had some time for rebuttal. Thank you, Your Honor. I just have a few points. First, I am struggling to reconcile the notion that Mr. Goh professes that this benefits all potential employees, and therefore it doesn't matter to a particular employee, given all the regulations we cited referring to an alien beneficiary, given the fact that the record repeatedly, at the agency, repeatedly refers to the alien beneficiary, one person, and given the fact that HCFR 204.5D is the one that sets the priority date, again, for a particular alien, the date of the application for the labor certificate is what governs an individual alien's ability to get, or place in line, essentially, for a green card. All of those show that the individual person is a beneficiary here and is affected by this decision. I would also say that at the motion to dismiss stage, the allegations of the complaint must be treated as true. Here, the district court completely ignored the allegations in the amended complaint that specifically refer to the lost opportunity. The amended complaint says there is this three-step process. I am at step one, the denial at step one, deprived me of the opportunity of moving to steps two and three. At page 48 of the complaint, of the excerpts of record, the complaint says that if the alien is already employed by the employer and is beyond the six-year limit, as Ms. Chau is, it bars the employer from extending the H-1B visa. And later on in her complaint, she alleges also that she could not possibly, because of the expiration of the visa, get another job. The district court, holding essentially to the opposite on the facts, is improper in that regard. Finally, on the last point about East Bay and looking at the particular provision of the law for purposes of the zone of interest, the Patchak case that we cited in our brief, Machi Benash Indians, as well as East Bay, recognize that you look at it in the context of the provision as well. And here that context is part of this three-step process. And that is why in Patel at the second step, Patel relied on the two cases we cited regarding the first step, as well as what happens at the third step, all to find that the alien beneficiary is within the zone of interest. If there are no further questions, I will urge the court to reverse. Thank you, counsel. We appreciate your arguments and your willingness to participate in our virtual court under all these circumstances. So thank you again. And the matter is submitted at this time. So we'll take just a few-minute recess so that we can make arrangements for the second case for argument, and that will be Smotsurabad versus Barr. So we'll be in recess for just a few minutes. Thank you.
judges: Paez, Clifton, Harpool